**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | **Chapter 11** |
| **CHESAPEAKE ENERGY CORPORATION, et al,** | § § § | **Case No. 20-33233 (DRJ)** |
| Debtors. | § § | **(Jointly Administered)** |
| **CHESAPEAKE ENERGY CORPORATION AND CHESAPEAKE OPERATING L.L.C.,** | § § § | **Adv. Pro. No. 20-_____** |
| Plaintiffs, | § § § | |
| v. | § § | |
| **STARR INDEMNITY & LIABILITY COMPANY,** | § § § | |
| Defendant. | § § | |

## ADVERSARY COMPLAINT

Chesapeake Energy Corporation ("CEC") and Chesapeake Operating L.L.C. ("Chesapeake Operating"), debtors in the captioned chapter 11 cases,[1] and hereby file this Complaint for Declaratory Judgment against Starr Indemnity & Liability Company ("Starr").  In support of this action, Chesapeake submits as follows:

### NATURE OF THE ACTION

1.     On January 29, 2020, Chesapeake's Daniel H. Wendland 1H oil and gas well in Burleson County, Texas experienced a loss of control and, as a result, a fire started.  Three individuals working on the Well died, and five other individuals have alleged that they sustained

---

[1] CEC, Chesapeake Operating, and their debtor affiliates may be referred to herein collectively as "Chesapeake" or the "Debtors."

significant injuries.  Chesapeake promptly notified Starr, its indemnity and liability insurer, of the Incident and subsequent personal injury and negligence Lawsuits, but Starr has failed to honor its obligations under the insurance policy it sold to Chesapeake.[2]

2.      Rather than paying the full cost of Chesapeake's defense of the underlying suits, Starr has pointed Chesapeake to its contractors and their insurers, suggesting that Chesapeake must shoulder the burden of obtaining contributions from those parties. As a result of Starr's failure to pay for Chesapeake's entire defense, Chesapeake has been forced to fund its defense in the Lawsuits with estate funds.

3.      The Policy does not allow Starr to thrust this burden onto Chesapeake.  To the contrary, it expressly provides that unless some other party or insurer actually pays for Chesapeake's defense—which has not occurred—Starr remains obligated to do so.

4.      This adversary proceeding seeks a declaration requiring Starr to uphold its contractual obligation to pay Chesapeake's defense costs in the Lawsuits without prejudice to Starr's subrogation rights to pursue any other party or its insurer.

5.      Resolution of this coverage dispute is critical to the efficient administration of the estates.  The Lawsuits are currently subject to the automatic stay, but several of the underlying plaintiffs are seeking relief from the automatic stay so that the Lawsuits may proceed.  Chesapeake does not object to lifting the stay with respect to those Lawsuits—so long as Starr is complying with its obligation to fund Chesapeake's defense.  If the Lawsuits were to proceed without a declaration of coverage as sought in this proceeding, Chesapeake would be forced to use estate funds to pay the substantial cost of the defense, to the detriment of creditors.  Thus, a declaratory

---

[2] Capitalized terms used but not defined have the meaning set forth later in this Complaint.

judgment is necessary to allow the underlying Lawsuits to proceed with the cost of Chesapeake's defense fully covered by insurance—as the Starr Policy requires.

## PARTIES

6.      CEC, a debtor in the captioned bankruptcy matter, is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.

7.      Chesapeake Operating, a debtor in the captioned bankruptcy matter, is an Oklahoma limited liability company whose sole member is CEC.

8.      Starr Indemnity & Liability Company is a Texas corporation, and its principal place of business is located in New York City, New York.  Starr may be served through its agent for service, CT Corporation at 1999 Bryan Street, Suite No. 900, Dallas, Texas, 75201-3136.

## JURISDICTION AND VENUE

9.      On June 28, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), thereby creating Debtors' bankruptcy estates (the "Estates") and commencing their jointly administered bankruptcy cases.

10.     The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. In addition, the Court has core jurisdiction over this proceeding under 28 U.S.C. § 157(b)(2)(A). Chesapeake's claims are directly related to its bankruptcy cases and will have a significant impact on the Debtors' estate, as well as on core proceedings—including certain plaintiffs' motions to lift the automatic stay, as discussed herein.

11.     The Court has personal jurisdiction over Starr under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7004(f).

12.     Pursuant to Bankruptcy Rule 7008(a), Chesapeake consents to the entry of final orders or judgment by this Court.  The Company also consents to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

13.     Venue is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     This adversary proceeding is initiated under Bankruptcy Rule 7001(9) and 28 U.S.C. § 2201.

### FACTUAL BACKGROUND

#### *The Underlying Incident and Litigation*

15.     Chesapeake Operating operates the Daniel H. Wendland 1H oil and gas well in Burleson County, Texas (the "Well").  In late 2019, the Well began experiencing downhole tubing issues.  In response, Chesapeake Operating hired a number of independent contractors in January 2020 to perform a workover operation and change out the B-section portion of the wellhead.  These contractors included C C  Forbes Company LP ("Forbes"), Eagle PCO LLC ("Eagle"), A & L Hot Oil Service Inc. ("A&L"), and SDS Petroleum Consultants, LLC ("SDS") (collectively, the "Contractors").

16.     During completion of the B-section work, on January 29, 2020, the Well suffered an unexpected loss of control, causing a fire (the "Incident").  Three individuals working on the Well died, and five other individuals alleged that they sustained significant injuries as a result. Each of those individuals was employed by one of the Contractors.  No Chesapeake personnel were on site at the time of the Incident.

17.     In February 2020, soon after the Incident occurred, families of the deceased and individuals alleging injuries filed litigation (collectively, the "Lawsuits") against CEC,

4

Chesapeake Operating, or both, as well as against a combination of the Contractors.  The Lawsuits

include:

- *Maldonado v. Chesapeake Operating, L.L.C; Chesapeake Energy Corporation, SDS Petroleum Consultants, L.L.C, A&L Hot Oil Service, Inc.; Forbes Energy Services, LTD.; Forbes Energy Services, L.L.C.; CC Forbes, L.L.C.; Eagle PCO, LLC*, 162nd Judicial District Court for Dallas County, Cause No. DC-20-06809

- *Madison Hendrix, individually and as the personal representative of the Estate of Brad Hendrix v. Chesapeake Energy Corporation; CC Forbes, LLC; Forbes Energy Services, LLC; Eagle PCO LLC; WildHorse Resource Management Company, LLC*, 298th Judicial District Court for Dallas County, Cause No. DC-20-06798

- *Omar Balboa v. A&L Hot Oil Services, Inc., SDS Petroleum Consultants, LLC, Chesapeake Energy Corporation, Forbes Energy Services, LTD., Forbes Energy Services, LLC, CC Forbes, LLC, Eagle PCO, LLC*, 192nd Judicial District Court for Dallas County, Cause No. DC-20-06888

- *Joe Eric Cabrera v. Chesapeake Operating, L.L.C.; Chesapeake Energy Corporation, SDS Petroleum Consultants, L.L.C; A&L Hot Oil Service, Inc., Eagle PCO, LLC*, 192nd Judicial District Court for Dallas County, Cause No. DC-20-06894

- *Kevin Mirelez v. Chesapeake Operating, L.L.C.; Chesapeake Energy Corporation, SDS Petroleum Consultants, L.L.C.; A&L Hot Oil Service, Inc.; Eagle PCO, LLC*, 192nd Judicial District for Dallas County, Cause No. DC-20-06884

- *Miguel Carrillo v. Chesapeake Operating, L.L.C.; Chesapeake Energy Corporation, SDS Petroleum Consultants, L.L.C.; A&L Hot Oil Service, Inc.; Eagle PCO, LLC*, 95th Judicial District for Dallas County, Cause No. DC-20-06892

- *Traci Hendrix, individually and as Next of Kin to the Estate of Bradley Hendrix, Deceased v. Chesapeake Energy Corporation, Chesapeake Operating LLC, Forbes Energy Services Delaware LLC, C.C. Forbes LLC, Forbes Energy Services Ltd, A&L Hot Oil Service Inc., SDS Petroleum Consultants, LLC*, 44th Judicial District for Dallas County, Cause No. DC-20-06937

- *Linda Milanovich, Justin Cobb, Individually and as Next Friend of M.C. and R.C., Minors, and Kristine Cobb, Individually and as Next Friend of K.C. and M.C., Minors v. Chesapeake Energy Corporation, et al.*, 116th Judicial District for Dallas County, Cause No. DC-20-06977

- *Erika Beddingfield, individually and as next friend of M.B., a minor, and as representative of the Estate of Windell Beddingfield, Deceased v. Chesapeake*

*Energy Corporation, Chesapeake Operating, L.L.C., Forbes Energy Services, Ltd., C.C. Forbes, LLC, Forbes Energy Services, LLC, A&L Hot Oil Service Inc., SDS Petroleum Consultants, LLC*, 192nd Judicial District for Dallas County, Cause No. DC-20-07024

- *Linda Milanovich v. Chesapeake Operating, L.L.C. and Chesapeake Operating Corporation*, 335th Judicial District for Burleson County, Cause No. 29969

- *Christopher Wilson v. Chesapeake Energy Corporation, et al.*, 95th Judicial District Court for Dallas County, Cause No. 20-15646

18.     The Lawsuits assert negligence, gross negligence, and wrongful death claims against CEC, Chesapeake Operating, and the Contractors.  On the whole, the plaintiffs claim that CEC, Chesapeake Operating, and some combination of the Contractors violated their duty of care, and that their actions were the proximate cause of plaintiffs' bodily injuries and, in some cases, deaths.[3]

### *The Starr Insurance Policy*

19.     Starr issued Chesapeake a Commercial General Liability insurance policy, effective July 1, 2019 (the "Policy"), attached hereto as Exhibit B.  Both CEC and Chesapeake Operating are named insureds under the Policy.  (Policy at CHK_Wendland1H_00000105, Extension Schedule of Named Insureds.)  The Starr Policy includes several provisions relevant to this dispute.

20.     At the outset, the Policy obligates Starr to "pay on behalf of the Insured those sums in excess of the 'Retained Limit' that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  (Policy at CHK_Wendland1H_00000120, Self-Insured Retention Endorsement § I(a).)  The Retained Limit

---

[3] The Petition filed in *Maldonado v. Chesapeake Operating, L.L.C; Chesapeake Energy Corporation, SDS Petroleum Consultants, L.L.C, A&L Hot Oil Service, Inc.; Forbes Energy Services, LTD.; Forbes Energy Services, L.L.C.; CC Forbes, L.L.C.; Eagle PCO, LLC*, 162nd Judicial District Court for Dallas County, Cause No. DC-20-06809, is attached hereto as Exhibit A.  Starr has not disputed that all of the Lawsuits identified above allege claims for "bodily injury" as defined in the Starr Policy.  To avoid burdening the Court with an unnecessarily large filing, the petitions in the other Lawsuits are not attached.

under the Policy is $500,000. (Policy at CHK_Wendland1H_00000122, Self-Insured Retention Endorsement § III).

21.     "Bodily injury" is defined in the Policy as "physical injury, sickness or disease, including death resulting from any of these; or the following when accompanied by physical injury, sickness or disease: mental anguish; shock; or emotional distress." (Policy at CHK_Wendland1H_00000112, Bodily Injury Definition Endorsement.)

22.     "Damages" are defined to include reasonable attorneys' fees and necessary litigation expenses, including those "[a]ssumed in a contract or agreement that is an 'insured contract.'" (Policy at CHK_Wendland1H_00000062, § I(A)(2)(b)(2).)

23.     An "insured contract" is defined to include a contract or agreement "under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." (Policy at CHK_Wendland1H_00000072, § V(9)(f).)

24.     The Policy also includes an "excess insurance" provision dealing with situations in which Chesapeake may have insurance available from insurers other than Starr, such as insurers of its Contractors that may cover Chesapeake as an "additional insured." Critically, the Policy does *not* allow Starr to avoid its own obligations to Chesapeake when other potentially responsible insurers are not in fact providing coverage. To the contrary, the Policy expressly states that "[i]f no other insurer defends, we [Starr] will undertake to do so, but we will be entitled to the insured's rights against all those other insurers." (Policy at CHK_Wendland1H_00000071,§ IV, 4(b)(2).)

25.     Thus, unless and until some other insurer actually defends Chesapeake as an additional insured, Starr must defend Chesapeake; in return, Starr is subrogated to Chesapeake's rights against the other insurers. This common-sense arrangement provides Chesapeake, the policyholder, with the critical defense protection it contracted for in the event it is sued, and shifts

to Starr, the insurer, the burden of "filling the gap" until any other potentially responsible party steps up to relieve part of the obligation.

### *Starr's Failure To Uphold Its Obligations Under The Insurance Policy*

26.     The Lawsuits assert claims against Chesapeake for "bodily injury" as defined in the Policy.

27.     Chesapeake's costs to defend the Lawsuits are "damages" as defined in the Policy.

28.     The Lawsuits also trigger Chesapeake's obligations to defend and indemnify its Contractors.  Chesapeake is a party to certain Master Services Agreements (each, an "MSA") with its Contractors, including (i) a February 2010 MSA with A&L; (ii) a November 2018 MSA with Eagle; (iii) a 2010 MSA with Forbes; and (iv) a 2018 MSA with SDS.

29.     The MSAs obligate Chesapeake to defend and indemnify the Contractors in certain circumstances.

30.     The MSAs with A&L, Eagle, Forbes, and SDS all constitute "insured contract[s]" under the terms of the Policy.

31.     The Lawsuits assert various claims against the Contractors, for which the Contractors allege that Chesapeake owes indemnity under the terms of each Contractor's MSA. For example, in suits brought by employees of Eagle, Chesapeake is alleged to owe indemnity to Forbes, SDS, and A&L, while, in suits brought by Forbes' employees, Chesapeake is alleged to owe indemnity to Eagle, SDS, and A&L.  In all instances, the defense and indemnity obligations Chesapeake is alleged to owe obligations under "insured contracts."  As a result, any defense and indemnity obligations Chesapeake owes under the MSAs are "damages" under the Starr Policy.

32.     As required under the Policy, Chesapeake promptly provided Starr with notice of the Lawsuits.  Chesapeake has requested that Starr provide coverage with respect to the plaintiffs'

claims against Chesapeake and CEC, as well as with respect to Chesapeake's obligation to defend and indemnify the Contractors. *See, e.g.*, Oct. 29, 2020 Letter from M. Herald (Chesapeake) to P. Zatopek (Starr) (the "Oct. 29, 2020 Letter") at 3-4, attached hereto as Exhibit C.

33.     Despite repeated demands and months of efforts on Chesapeake's part to secure coverage, Starr has failed to provide full coverage for the Lawsuits as it is obligated to do.  In fact, nearly nine months after the Incident, Starr has even failed to issue Chesapeake a reservation of rights letter. *See* Oct. 29, 2020 Letter at 1.

34.     Initially, Starr appeared willing to work with Chesapeake, and the parties agreed to payment rates for Jones Walker, Chesapeake's defense counsel.  Apr. 22, 2020 Email from A. Demery (Starr) to J. Norris (Chesapeake's counsel), attached hereto as Exhibit D.

35.     Since that time, though, Starr has avoided its obligations by dragging its feet, obfuscating its coverage positions, and refusing to pay the full cost of Chesapeake's defense—including bills from Jones Walker at the rates Starr previously agreed to. *See* Oct. 16, 2020 Letter from P. Zatopek (Starr) to J. Hubscher (Chesapeake), attached hereto as Exhibit E; Oct. 29, 2020 Letter at 3.

36.     Not only has Chesapeake met the Retained Limit under the Policy with payment of defense costs of $500,000, it paid approximately $210,000 in excess of the Retained Limit. Pursuant to the Policy, Starr—not Chesapeake—should have paid this amount.  In addition, to date, Starr has failed to pay Jones Walker for more than $750,000 in fees incurred defending Chesapeake in the Lawsuits—a substantial portion of Jones Walker's fees. *See* Oct. 29, 2020 Letter at 2.

37.     Starr's delay and dissembling stems from its efforts to reduce its own obligations by forcing Chesapeake to chase and convince other insurers to pay for a portion of the defense.

9

*See, e.g.*, Oct. 9, 2020 Letter from J. Ziemianski (counsel to Starr) to J. Hubscher (Chesapeake), attached hereto as Exhibit F.

38.     The Policy does not allow Starr to put its own interest in minimizing its contribution ahead of Chesapeake's interest in obtaining a full defense to the Lawsuits.

39.     While other insurers may also owe coverage to Chesapeake, Starr's refusal to provide coverage in the first instance is contrary to its obligation to defend Chesapeake unless and until some other insurer actually defends Chesapeake as an additional insured.  Pursuant to Section IV, § 4(b)(2) of the Starr Policy (Policy at CHK_Wendland1H_00000071), Starr must step up to provide Chesapeake coverage.  In return, Starr receives Chesapeake's rights to subrogate against those other insurers.  *See id.*

40.     Chesapeake has incurred substantial defense costs in the Lawsuits and will continue to do so in the future.  Indeed, if the automatic stay is lifted and the Lawsuits are allowed to proceed, Chesapeake's defense costs will mount much more rapidly, to the detriment of Debtors' estate and creditors.

41.     Starr's failure to honor its obligations under the terms of the Starr Policy also substantively prejudices Chesapeake's defense with respect to the Contractors.  For example, as a result of Starr's failure to cover the SDS defense costs (for which Chesapeake is obligated under the terms of an "insured contract"), neither SDS nor Jeff Luce, the consultant that SDS referred and Chesapeake hired to oversee operations on the Well, will cooperate with Chesapeake in its defense of this matter.  This is prejudicial to Chesapeake because Mr. Luce's cooperation is essential for Chesapeake to understand the facts surrounding the Incident—particularly given that no Chesapeake personnel were on site at the time of the Incident.  Thus, Chesapeake's ability to fully defend itself in the Lawsuits is severely impaired by Starr's inaction.

### *The Bankruptcy and Automatic Stay*

42.     Each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date.  The cases have been consolidated and are jointly administered pursuant to Rule 1015(a) of the Federal Rules of Bankruptcy Procedure under *In re Chesapeake Energy Corporation, et al.*, Case No. 4:20-bk-33233 (DRJ) (the "Bankruptcy Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

43.     As of the Petition Date, the Lawsuits were automatically stayed by operation of section 362 of the Bankruptcy Code.

44.     Since that time, the Debtors and certain plaintiffs in the Lawsuits have engaged in discussions regarding lifting the automatic stay to permit the Lawsuits to proceed.  In light of Starr's refusal to perform under the Policy, the parties have been unable to reach a consensual resolution.  If Chesapeake's dispute with Starr is resolved, however, Chesapeake will consent to lifting the automatic stay to allow the Lawsuits to proceed.

45.     Subsequent to those discussions, two subsets of plaintiffs in the Lawsuits have filed motions to lift the automatic stay.  *See In re Chesapeake Energy Corporation, et al.*, Case No. 4:20-bk-33233 (DRJ), Mot. of Justin Cobb, Kristine Cobb, & Linda Milanovich for Relief from the Automatic Stay, Dkt. 1448; *id.* at Mot. of Madison Hendrix; Traci Hendrix, Individually & as Next of Kin to the Estate of Bradley Hendrix; Norma Lyn Maldonado, Individually & as Representative of the Estate of Brian Amador Maldonado; & Erica Beddingfield, Individually & as Next Friend of M.B., a Minor, & as Representative of the Estate of Windell Beddingfield, Deceased for Relief from Stay to Conclude Pending Tex. State Ct. Litig., Dkt. 1558.  A hearing on those motions has been scheduled for November 20, 2020.  *See id.* at Dkts. 1448, 1558.

11

46.     As a result of these developments, and in light of the Debtors' desire to resolve the insurance coverage dispute and consensually lift the stay, the Debtors commenced this adversary proceeding to expeditiously resolve the insurance coverage dispute with Starr and allow the Lawsuits to proceed without requiring the Debtors to unnecessarily divert critical estate resources.

## COUNT 1:  DECLARATORY JUDGMENT

47.     Chesapeake adopts and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

48.     All conditions precedent to Starr's obligation to pay for Chesapeake's defense of the Lawsuits have been met.

49.     Chesapeake has paid all premiums owed under the Policy.

50.     Chesapeake has performed any and all obligations required under the Policy.

51.     As a direct and proximate result of Starr's breaches of its obligations under the Policy, Chesapeake has suffered, will suffer, or is continuing to suffer, damages, costs, and other losses and has been or will be incurring damages in an amount to be proven.

52.     The facts set forth above demonstrate the existence of an actual, justiciable controversy involving specific, adverse claims regarding the interpretation and effect of the Policy and the rights and obligations of Chesapeake under the Policy, which claims are ripe for adjudication.  All facts necessary for an adjudication of this dispute have occurred.

53.     Despite Chesapeake's repeated requests, Starr refuses to comply with its obligations under the Starr Policy, leaving Chesapeake burdened with the attorney's fees and legal expenses arising from its defense in the Lawsuits in the midst of the pending Bankruptcy Cases. While Chesapeake's initial expenses have been manageable thus far while the automatic stay remains in effect, the plaintiffs in the Lawsuits have begun filing motions to lift the automatic stay,

seeking the Court's approval for the Lawsuits to move forward.  Chesapeake's willingness to consent to lift the automatic stay hinges on a determination that Starr is required to cover and defend Chesapeake under the terms of the Starr Policy and thus must pay for Chesapeake's past and future defense costs, including with respect to Chesapeake's defense and indemnity obligations to any of the Contractors arising in conjunction with the Lawsuits, unless and until some other insurer defends Chesapeake as an additional insured.

54.     Therefore, Chesapeake seeks an order declaring that Starr is bound to pay Chesapeake's cost of defense in the Lawsuits, including with respect to defense obligations owed by Chesapeake to any of the Contractors in connection with the Lawsuits unless and until some other insurer actually pays for Chesapeake's defense as an additional insured.

### COUNT 2:  BREACH OF CONTRACT

55.     Chesapeake adopts and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

56.     Starr issued the Policy to Chesapeake to provide insurance coverage for damages resulting from bodily injury, including defense costs.

57.     Under the Terms of the Policy, Starr is obligated to pay Chesapeake's defense costs unless and until some other insurer defends Chesapeake as an additional insured, without prejudice to Starr's subrogation rights against those other insurers.     (Policy at CHK_Wendland1H_00000070-71, § IV(4)(b)(2).)

58.     The Policy requires that Starr pay Chesapeake's defense costs in the Lawsuits, including with respect to Chesapeake's defense obligations to any of the Contractors arising in conjunction with the Lawsuits unless and until some other insurer actually defends Chesapeake as an additional insured.

59.     All conditions precedent to Starr's obligation to pay Chesapeake's damages have been met.

60.     Chesapeake paid all premiums owed under the Policy.

61.     Chesapeake performed any and all obligations required under the Policy.

62.     Starr has an obligation and/or duty to pay for Chesapeake's defense costs incurred as a result of the Incident and subsequent lawsuit.

63.     As a result of Starr's breach of its obligation and/or duty to pay defense costs incurred by Chesapeake as a result of the Incident, Chesapeake has incurred damages in the form of legal fees and expenses, both present and future.

64.     Starr has failed to honor its contractual obligation to pay for defense costs incurred by Chesapeake and its Contractors as a result of the Incident.

**<u>PRAYER FOR RELIEF</u>**

Based on the foregoing, Chesapeake respectfully requests that the Court enter a judgment:

A.     Declaring that Starr is required, pursuant to the Starr Policy, to (1) pay Chesapeake's past and future attorney's fees and legal expenses incurred in the Lawsuits, and (2) comply with its defense obligations under the Starr Policy as related to the Lawsuits;

B.     Finding that Starr is in breach of the Starr Policy and, consequently, that Chesapeake is entitled to recover its accrued costs of defense with interest and attorneys' fees incurred filing this adversary claim; and

C.     Awarding such other and further relief the Court may deem just and proper.

14

Houston, Texas
November 5, 2020

/s/ Matthew D. Cavenaugh

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:          mcavenaugh@jw.com
                jwertz@jw.com
                kpeguero@jw.com
                vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice* )
Marc Kieselstein, P.C. (admitted *pro hac vice* )
Alexandra Schwarzman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                marc.kieselstein@kirkland.com
                alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh
