# EXHIBIT C



**Merideth Herald**
*Managing Attorney – Brazos Valley*

October 29, 2020

**VIA EMAIL:** paul.zatopek@starrcompanies.com
Paul Zatopek
Energy Claims Manager
Starr Adjustment Services
5151 San Felipe, Suite 200
Houston, TX 77056

RE:   Fire at Chesapeake Operating, LLC Well Site, Burleson County, Texas
      Insured:     Chesapeake Energy
      DOL:         29 January 2020
      Policy No:   3F981671429868

Dear Paul:

This letter is in response to your letter of October 16, 2020.

Your letter is simply the latest step in Starr's now months-long pattern of failing to honor its contractual obligations to Chesapeake, both for Chesapeake's own defense and under its "insured contracts" with other defendants as defined in the Starr policy. The characterizations in your letter are self-serving and inaccurate, and in no way establish any basis for Starr to avoid its coverage obligations. Chesapeake reiterates its request that Starr honor its obligations under the policy in full.

Starr's failure to acknowledge its obligations is especially troubling given the length of time that has passed since our tender. Nearly nine months after the Wendland incident, Starr has not even issued a reservation of rights letter stating which claims made in the Wendland matters are covered and which Starr contends are not. While Chesapeake in no way concedes that the law allows Starr to cure that failure at this stage, we are entitled to know Starr's position. Chesapeake demands that Starr issue its coverage opinion with respect to all claims in the Wendland matters (including with respect to insured contracts) on or before November 3, 2020.

Below, I have addressed your specific questions and allegations:

1. <u>Eagle May 11, 2020 Phone Conversation</u>:  Your letter asks, "did Chesapeake relieve Eagle's insurer(s) of honoring the defense obligation that they accepted"? The answer is unequivocally ***no***; Chesapeake has not relieved Eagle PCO LLC ("Eagle") or its insurers of any obligation, and there is no basis for Starr to suggest otherwise.

**Chesapeake Energy Corporation**
P.O. Box 18496  /  Oklahoma City, OK 73154-0496  /  6100 N. Western Avenue  /  Oklahoma City, OK 73118
405-935-4437  /  f: 405-849-0064  /  merideth.herald@chk.com

On May 11, 2020, a phone conversation occurred during which Chesapeake, Eagle, and Eagle's insurance carrier discussed defense and indemnity ("D&I") obligations under the MSA. Far from relieving any party of its obligations, Chesapeake confirmed Eagle's acceptance of Chesapeake's D&I tender. The parties also discussed the logistics of how Eagle would pay Chesapeake's defense costs. No definitive agreement was reached, in part because the parties believed it made more sense to put those processes in place after CC Forbes LLC's ("Forbes") formally accepted its D&I obligations, an event that, at the time, the parties understood to be imminent.  If there was any "agreement," it was simply to hold off on putting a process in place for reimbursement until all parties were part of the conversation—not to "relieve" any obligation. It has always been in everyone's best interest—including Starr's—to have all carriers responsible for funding the various defendants' defenses coordinate how those costs would be paid, and that is all that was discussed on the May 11th call.

Your letter refers to correspondence from Michael Streich, Eagle's counsel, and Jenny Michel, counsel for Eagle's insurer, regarding the May 11th phone conversation.  You are misinterpreting Mr. Streich and Ms. Michel's references to that call.  To be abundantly clear: nothing was discussed about limiting Eagle's D&I obligations—on the May 11th call or at any other time.  Indeed, the October 7th email from Ms. Michel to which you refer describes the discussion in relevant part as that "each party would continue to pay its own defense costs ***until a final defense and indemnity agreement was reached*** with CC Forbes Company, LP." (emphasis added). Seeing that there is no written agreement waiving Eagle's D&I obligations further supports this. Chesapeake will vigorously defend its position that no waiver of Eagle's D&I obligations took place.

It is troubling that Starr has known about these coordination conversations for months, yet waited until October 16 to raise a call that occurred five months earlier as some purported obstacle to coverage. This simply underscores that the issue here has been Starr's consistent delay, and not any supposed "agreement" by Chesapeake. Since the May 11th call, both Starr and Eagle's carrier have refused to coordinate, and instead have used the unfounded claims of manufactured billing logistics issues to avoid paying Chesapeake's defense. This foot-dragging is threatening Chesapeake's ability to defend the underlying cases, and it must come to an end. Chesapeake again requests that Starr coordinate with all the other carriers involved in providing defense and indemnity in this matter—including Eagle's carrier—and that Starr acknowledge its obligation to pay for Chesapeake's entire defense until some other insurer actually contributes a portion.

2. <u>Jones Walker Fees</u>: As of today, Starr has failed to reimburse over $750,000.00 in fees that Chesapeake has incurred to defend the Wendland cases. Starr has a duty to pay for Chesapeake's defense (as well as its contractual D&I commitments under insured contracts), and it is plainly in breach. Starr's failure to pay outside counsel's bills continues to cause significant damage to our ability

to defend these matters and threatens to disrupt the defense and expose Chesapeake to liability.

Your October 16th letter concedes that Starr will pay the Jones Walker hourly rates to which it agreed in April, but asserts that Starr is otherwise "withdrawing" from the agreement and insists on the application of Starr's litigation management guidelines. Starr has no right to impose its own guidelines given its failure to assume or pay for the defense, and in case, Jones Walker is already working under Chesapeake's litigation management guidelines, as Starr is well aware (and agreed in April). In sum, there is no reason for Starr to delay payment on this basis. We reiterate our demand for immediate payment to Jones Walker of all outstanding fees. Please confirm by November 3rd that Starr will pay the firm's outstanding fees in full, and that Starr will continue to timely pay future fees and expenses.

Your letter also indicates that Starr is prepared to appoint new counsel. That suggestion makes no sense. Jones Walker has done an excellent job defending the cases, and Starr has never suggested otherwise. Appointing new counsel will only cost Starr significantly more money and everyone more time. Jones Walker has spent hundreds of hours on these cases and is well acquainted with the players and issues. It would take an unsurmountable amount of time for new counsel to get properly up to speed—especially given that there are now 11 pending lawsuits, an OSHA investigation and a CSB investigation. Chesapeake's strong desire is to continue using Jones Walker pursuant to the terms reflected in the letter agreement.

I am also compelled to address the references in your letter to insurers of other parties. While Chesapeake is certainly aware of its own obligations under the policy, including those relating to subrogation actions Starr may choose to bring once it has paid Chesapeake's loss, none of those obligations relieve Starr of *its own* obligations to Chesapeake. Your letter refers first to Liberty, Forbes' insurer. The prospect of Liberty eventually confirming that Chesapeake has additional insured status under its policy does not excuse Starr from its obligations to Chesapeake in the first instance. To the contrary, the policy expressly states that unless and until some other insurer defends Chesapeake as an additional insured, Starr "will undertake to do so, but we will be entitled to the insured's rights against all those other insurers." (§IV, ¶4(b)(2)). Starr has a duty to pay Chesapeake's defense costs for the Forbes matters, and *then* Starr may exercise its right to file a subrogation suit against Forbes and its insurers for failure to accept their D&I obligations of Chesapeake (and others). Your suggestion that Chesapeake has "failed to assist" Starr is incorrect. It is Starr that has failed to meet its obligations by using the potential responsibility of other insurers as an excuse to delay paying for Chesapeake's defense. Chesapeake is happy to cooperate with Starr in Starr's pursuit of other insurance, but Starr cannot put the cart before the horse by attempting to make subrogation *precede* its own obligations under the policy.

Your letter also suggests that Chesapeake seek additional insured status under policies issued to SDS Petroleum Consultants, LLC ("SDS") and A&L Hot Oil Service, Inc.

3

("A&L"). As we have expressed several times in the past few months, Chesapeake will not seek to force these contractors to pay Chesapeake's defense costs for cases in which their employees have not brought suit. This is not how the MSA is designed to work. Instead, Chesapeake is contractually obligated to provide defense and indemnity *to* SDS and A&L in the cases brought by Forbes' and Eagle's employees (and potentially to SDS in the recent case brought by A&L's employee). That contractual obligation is an "insured contract" under the Starr policy, and Chesapeake fully expects Starr to honor its promise to provide coverage.

Starr now appears to concede (as it must) that SDS and A&L themselves owe no indemnity to Chesapeake, but your letter and subsequent correspondence suggests that their insurers may somehow be obligated to cover Chesapeake irrespective of the absence of any indemnity obligation. It is not clear to us that is the case[1] but, again, Starr may pursue those claims in subrogation once it honors its obligations to Chesapeake and Chesapeake has not failed in any way to assist Starr in its pursuit of those potential claims.

Finally, you asked that Chesapeake let you know how we wish to proceed. We continue to wish to move forward amicably and for Starr to defend Chesapeake as required under the policy, which includes promptly paying all of Chesapeake's defense costs, as well as the defense costs of the other contractors.

We look forward to a prompt response.

Regards,

Merideth Herald

CC:   Jennifer Van Scoy
      Email:  Jennifer.VanScoy@esis.com

      Jeff Higgins
      Email:  Jeff.Higgins@alliant.com

      Joe Ziemianski
      Email:  JZiemianski@cozen.com

---

[1] We draw your attention to Section 10.5(A) of SDS's MSA, which makes clear that SDS's policy is only primary to the extent to which SDS assumes liability or agrees to indemnify Chesapeake under the terms of the MSA. We also draw your attention to Section VI(15)(A) of SDS's insurance policy with Lloyd's, which states that Additional Insureds shall only be covered with respect to the specific activities and operations of SDS that would otherwise be covered in the absence of the "Additional Insured" designation, and that the designation of an Additional Insured "shall in no way" extend or broaden the scope of coverage.

4

Dom Farmer
Email:   Dom.Farmer@edbroking.com

Michael Adams
Email:   Michael.Adams@edbroking.com

Marina Markantoni
Email:   Marina.Markantoni@talbotuw.com

Michael Moore
Email:   MMoore@Chubb.com

Evan Caffrey
Email:   ecaffrey@hallmaineslugrin.com

Matt Jett
Email:   mjett@hallmaineslugrin.com

Thomas Upton
Email:   Thomas.Upton@makel.com

James Glennon
Email:   jglennon@fgppr.com

Melissa Puglia
Email:   Mpuglia@eimltd.com

Jenny Isted
Email:   Jenny.Isted@canopius.com