# EXHIBIT E



Starr Companies
5151 San Felipe, Ste. 200
Houston, TX 77056

October 16, 2020

**VIA E-MAIL**
Joel A. Hubscher
Compliance Counsel
Chesapeake Energy Corporation
P.O. Box 18496
Oklahoma City, OK 73154-0496
*joel.hubscher@chk.com*

RE:   Fire at Chesapeake Operating, LLC Well Site, Burleson Co, TX
       Insured:          Chesapeake Energy
       DOL:            29 January 2020
       Claim No:      3F981671429868

Dear Joel:

As you have seen from recent correspondence from Michael Streich and Jenny Michel, they claim that Chesapeake Energy Corporation, WildHorse Resource Development Company and Chesapeake Operating, LLC (collectively "Chesapeake") entered into an agreement with Eagle PCO LLC ("Eagle") and Eagle's insurer(s) on May 11, 2020 with regard to indemnity and defense obligations under the Master Service Agreement.  Please advise us at your earliest convenience whether, in fact, Chesapeake entered into an agreement concerning indemnity or defense.

Specifically, did Chesapeake relieve Eagle's insurer(s) of honoring the defense obligation that they accepted in a letter from Jenny Michel dated March 30, 2020?  If so, please provide us with the terms and let us know what consideration was paid.

We take this opportunity to remind you of the following policy provisions:

          **SECTION  IV  –  COMMERCIAL  GENERAL  LIABILITY CONDITIONS**

                                 * * *

    **2.**       **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

                                   * * *

        **c.**       You and any other involved insured must:

                                   * * *

(3)      Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)      Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**      No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Please be advised that Starr never consented to any agreement regarding defense and indemnity obligations under the MSA that Chesapeake may have been entered with Eagle and Eagle's insurer(s) on May 11, 2020. If any such agreement was entered into between those parties, Starr reserves the right to deny coverage on that basis.

Further, Chesapeake is contractually obligated to assist Starr "in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply." Starr, on its own, prepared a draft lawsuit for Chesapeake to file against Liberty Insurance Corporation. To date, it is our understanding that you have failed to assist us in pursing this very substantial source of defense and indemnity. Likewise, Chesapeake has also apparently failed to seek additional insured status under policies issued by SDS Petroleum Consultants, LLC and A&L Hot Oil Service, Inc.

Star insists that Chesapeake comply with its contractual obligations in this regard and reserves its right to declare a breach of a material condition of the policy that will jeopardize Chesapeake's coverage.

Finally, to the extent that the unsigned rate agreement ever existed, please be advised that Starr is hereby withdrawing from that agreement. Starr, however, will continue to pay the rates reflected in that agreement but only if the Jones Walker firm will adhere to the attached Litigation Management Guidelines. Alternatively, Starr is prepared to appoint new counsel and pay the entirety of their reasonable and necessary fees and expenses.

Please let us know how you wish to proceed.

Sincerely,

*Paul Zatopek*

Paul Zatopek
Energy Claims Manager
Starr Adjustment Services
  A Member of Starr Companies
5151 San Felipe. Suite 200
Houston, TX 77056
713-470-2483
*paul.zatopek@starrcompanies.com*

Page **2** of **3**

CC:   Jennifer Van Scoy
       Email:  *Jennifer.VanScoy@esis.com*

       Jeff Higgins
       Email:  *Jeff.Higgins@alliant.com*

       Joe Ziemianski
       Email:  *JZiemianski@cozen.com*

       Dom Farmer
       Email:  *Dom.Farmer@edbroking.com*

       Michael Adams
       Email:  *Michael.Adams@edbroking.com*

       Marina Markantoni
       Email:  *Marina.Markantoni@talbotuw.com*

       Michael Moore
       Email:  *MMoore@Chubb.com*

       Evan Caffrey
       Email:  *ecaffrey@hallmaineslugrin.com*

       Matt Jett
       Email:  *mjett@hallmaineslugrin.com*

       Thomas Upton
       Email:  *Thomas.Upton@makel.com*

       James Glennon
       Email:  *jglennon@fgppr.com*

       Melissa Puglia
       Email:  *Mpuglia@eimltd.com*

       Jenny Isted
       Email:  *Jenny.Isted@canopius.com*



<div style="background:navy">

**CLAIMS LITIGATION MANAGEMENT GUIDELINES**
- Starr Indemnity & Liability Company
- Starr Surplus Lines Insurance Company
- Starr Specialty Insurance Company

</div>

<Release date: July-1-2020>



## I. EFFECTIVE LITIGATION MANAGEMENT

An effective strategy for resolution of every case is essential to Starr Indemnity & Liability Company, Starr Surplus Lines Insurance Company, and Starr Specialty Insurance Company (hereinafter "Starr").  Every case, whether large or small, benefits from a strategy for resolution that specifies the steps toward an identified outcome, as well as a comprehensive budget that clarifies the cost of implementing the strategy.

From commencement of the litigation until resolution occurs, the claims professional and counsel should discuss and pursue the earliest opportunities to achieve the preferred resolution. Although litigation management must by its nature be a flexible process, certain attributes are common to all litigation - there are always issues to be resolved and different parties will have different views of how those issues should be resolved. Thus in every case, effective litigation management requires:

- Identification of the issues that need to be resolved
- Selection of a preferred resolution
- A strategy to achieve the preferred resolution
- An understanding of costs to be incurred (i.e., a budget)

By agreeing in advance to the legal services required to provide a quality defense to the insured, the claims professional and counsel share a common understanding of the steps required to implement the case strategy.

The materials that follow include procedures and forms to assist in managing litigation. However, effective litigation management isn't demonstrated by rigid compliance with procedures and forms. It is evidenced by the extent to which the agreed upon strategy actively influences the course of the litigation and the results of the litigation.

The Claims Litigation Management Guidelines should be read and complied with in conjunction with Starr's Legal Billing Guidelines.



## II. CASE REFERRAL

Early exchange of information about a case is vital. The claims professional will provide counsel with available information about the case, particularly the need for any time-critical decisions, and will discuss with counsel:

- The allegations in the case
- The immediate legal services anticipated during the next 30 days
- A preliminary assessment of liability and case value
- The critical issues that are apparent from the available information

A formal assignment letter and copies of relevant documents will be provided to counsel as soon after the assignment as possible.

## III. THE AGREED TO LITIGATION PLAN AND BUDGET

Every file should have some documentation of the case strategy which should reflect agreements reached between the claims professional and counsel. Unless otherwise agreed to by Starr, the standard format for documenting the case strategy is the Agreed to Litigation Plan (ATLP, Attachment A). The ATLP is intended to be a consolidated report, strategic plan and budget document. Accordingly, it will evolve and become more complete as the case develops. An ATLP and budget should be in effect throughout the duration of the litigation.

Certain cases will not require the preparation of a detailed ATLP and budget. At the discretion of the Starr claims professional, cases that historically incur nominal legal expenses can be managed via a case strategy and budget for the duration of the case, which should be documented in a manner that evidences the agreement of counsel and the claims professional. If the case increases in complexity, the requirement of a detailed ATLP and budget may be requested. In most cases, when the verdict value is less than $100,000, an ATLP will not be required.

Similarly, when the complex circumstances or time constraints of a case do not allow for the development of a detailed ATLP and budget, a document that clearly indicates the resolution strategy and includes an estimate of legal fees through resolution will suffice. However, if the case does not resolve as anticipated by the strategy, a detailed ATLP and budget should be prepared to address all subsequent legal services.



## A. Timeframes

The current timeframe for the ATLP and budget should be clearly stated on the document. The following timeframes are recommended; however, they may be modified by the Starr claims professional.

Within 14 days after an assignment, the claims professional and counsel should have a detailed planning conversation wherein they discuss, in light of what is currently known about the case, the critical issues that must be resolved. Following this discussion, both parties should agree to an initial ATLP and budget, which should be documented and provided to the claims professional within 30 business days after the planning conversation. The timeframe of the initial ATLP will be based on the circumstances of the case and agreed upon by counsel and claims professional.

Within 120 days after assignment, counsel should schedule a further planning conference with the claims professional in order to reach agreement to revise or supplement the ATLP to include a meaningful case evaluation. Thereafter, the evaluation should be updated as warranted by the dynamics of the case. The ATLP should now include a discussion of legal services anticipated during the next ATLP timeframe, a budget for those services, and a projection of legal expenses through resolution.

The timeframe for each ATLP will be governed by the circumstances or litigation demands in each case. At the expiration of each timeframe, the ATLP should be revised or supplemented with updated information and to advise of new developments in the case. Each revision or supplement should include a discussion of legal services anticipated during the next timeframe and a budget for those services.

## B. Completing the ATLP and Budget

The standard format for the ATLP is provided as Attachment A, and the Starr Budget Template is provided as Attachment B. Starr claims professionals may modify the format and requirements for the ATLP and budget. All modifications must be documented.  Please note for all matters being billed via Starr's e-billing platform, Legal Tracker, the initial and all amended budgets must be electronically submitted through Legal Tracker for approval by the claims



professional. The Starr Budget Template may be used as a worksheet to assist with electronic budget preparation. Invoices will not be able to be processed without an approved budget in Legal Tracker.

The ATLP should discuss legal services to be provided during the timeframe. Each ATLP should include anticipated actions to respond to discovery, motions, etc., generated by the plaintiff, codefendants and the court. This involves anticipating the actions of others, which may require substantial amendment in certain cases. Counsel should advise the claims professional of any tasks that deviate substantially from the ATLP prior to performing those tasks.

The ATLP is divided into three primary components: Case Summary, Resolution Strategy and Case Management.

1. **Case Summary**
   - Summary of Facts
   - Critical Issues
     - Critical Liability Issues
     - Expected Liability Experts
     - Critical Damages Issues
     - Expected Damage Experts
     - Other Critical Issues
     - Evaluation

2. **Resolution Strategy**

3. **Case Management**
   - Case Staffing
   - Legal Services, Claims Activities and Budget

## C. Budgeting Guidelines

The decisions made during the litigation usually have a financial consequence. It is important to know those consequences, ideally before the decisions are made. Budgets provide a means of documenting the cost of a strategy, and should cover the same timeframe as the ATLP. For example, if a Motion for Summary Judgment is determined to be an appropriate strategy but was not included in the initial case budget through trial, the budget should be modified to reflect the cost of implementing this strategy.



The level of detail required for budgeting should be established by the claims professional at the initial planning conversation and whenever the dynamics of the case warrant a change. The budget should be complete enough to represent the legal expenses that are likely to be incurred with reasonable accuracy.

Each budget and budget update should address:

- Legal tasks that counsel will initiate
- Legal tasks that opponents are anticipated to initiate
- Legal tasks that the court or others are anticipated to initiate
- Legal tasks relating to case management, reporting and communications
- Expenses
- A projection of legal fees and future expenses through resolution

## D. Variances

The claims professional and counsel should discuss what might cause the ATLP or budget to vary, and they should have an understanding of how variances will be addressed.

## E. Updating the ATLP and Budget

The ATLP should include the date for a planning conversation, which should be scheduled to occur prior to expiration of the current agreed timeframe. The case strategy should be reviewed on a regular basis, with the frequency of review determined by the complexity of the matter and the scope of the current ATLP and budget. When case developments warrant supplementation or changes to the current ATLP before its planned expiration date, or when all planned activities have been completed, counsel and the claims professional should have a planning conference. The ATLP and budget should then be updated accordingly, and at least every 6 months.

## F. Managing Legal Expenses

Once the budget is established, it should be transmitted immediately to the claims professional.  It is up to both counsel and the claims professional to manage legal expenses within the agreed budget.



Substantial variances from the budget (whether because of new tasks or additional time needed on previously identified tasks) should be discussed before services are rendered.

## IV. COMMUNICATION

Counsel and the claims professional should discuss settlement strategies on a regular basis to ensure that opportunities to resolve the case by settlement (when this is the preferred outcome) are pursued. Counsel should immediately communicate, orally and in writing, important case developments to the claims professional, such as settlement overtures by other parties, codefendant strategies or developments, new information obtained through discovery, etc. Starr prefers that written materials be conveyed via e-mail when appropriate. Counsel should determine the insured's interest in receiving communications concerning the case and communicate with the insured accordingly.

It is the general policy of Starr to decline to comment on individual claims, potential or pending litigation or on litigation policies, practices and/or strategies of Starr. Counsel should obtain the agreement of the Starr Claims LOB Vice President prior to making any comment (other than a "no comment") to the press or other media. This rule is applicable to all Starr claims files whether handled by a TPA or a Starr Claims Manager.

### A. Case Documents

It typically isn't necessary to exchange every document received during the course of a lawsuit. The claims professional and counsel should determine what documents should be exchanged, and in what manner. The following items should be sent to us as a matter of course:

- The Answer, any Amended Complaints, and any third-party pleadings
- Copies of substantive pleadings or motions
- Responses to interrogatories and bill of particulars
- All settlement overtures, whether written or oral
- Releases, Dismissals or Final Judgments and all orders of the court
- All discovery responses that will require certification by claims personnel, with sufficient time to review those responses



## B. Case Development

Substantial legal expenses are incurred in obtaining and exchanging information between the parties to the lawsuit and between counsel and claims professionals. The claims professional and counsel should discuss the most cost-effective means to:

- Obtain information relative to the claim, such as contracts, witnesses, maintenance logs, etc.
- Exchange information between themselves
- Exchange information with other parties
- Exchange information with the courts
- Oppose requests when necessary

Investigations should be the responsibility of the claims professional whenever possible.

## C. Deposition Conference

Counsel should initiate a telephone conversation at least five business days prior to the plaintiff's deposition and the insured's deposition to discuss the critical issues to be addressed at the deposition and to confirm attendance of claims professional.

Counsel should provide a brief summary of the deposition, with specific emphasis on the significance of the testimony to the case, within 10 business days after the deposition. Unless specifically requested by the claims professional, Starr will not pay for page/line summaries or abstracts of depositions. Starr will allow the applicable paralegal rate for approved digesting or page/line summaries unless prior approval is granted for an attorney to complete this task. The additional cost of expedited deposition transcripts or videotaped depositions must be pre-approved by the claims professional or it will not be reimbursed.

## D. Other Depositions

Counsel should notify the claims professional prior to depositions of witnesses that are critical to the evaluation or strategy of the case in sufficient time to allow attendance by the claims professional if they wish. If the deposition provides



information that is valuable to the evaluation or strategy of the case, counsel should provide a brief summary of the deposition, with specific emphasis on the significance of the testimony to the case, within 10 business days after the deposition if the claims professional has not attended. Unless specifically requested by the claims professional, Starr will not pay for line by line summaries or abstracts of depositions. When requested by the claims professional, counsel should provide a digital copy of the transcript (if available).

## E. Pre-Trial Report

Counsel must provide a written pre-trial report to the claims professional using the format provided in Attachment C unless a different format is requested by the Starr claims professional. The report should be submitted no later than 60 days prior to the scheduled trial date. Counsel should provide immediate reports on continuing discovery and motion practice up to the trial date. The Starr claims professional has authority to waive this requirement in cases with a potential verdict value of less than $100,000.

## F. Pre-Trial Preparedness Report

Starr may require counsel to complete the Pre-Trial Preparedness Report.  This document will be provided to counsel on an as-needed basis.

## G. Event Reporting

Counsel should notify the claims professional of settlement conferences, mediations, arbitration hearings, or trial dates as soon as possible in order for schedules to be coordinated for attendance by the claims professional. Counsel must advise of any subsequent changes. These dates should be clearly indicated in the caption of all reports provided by counsel. The results of hearings, arbitrations or other substantive court appearances must be communicated to the claims professional within one business day. During trial, counsel must communicate with the claims professional at least once daily.



## V. CASE MANAGEMENT

### A. Case Staffing

The assigned trial attorney is responsible for the case. Attendance at substantive court appearances and depositions should be made by the assigned attorney. The assigned attorney should discuss the need for involving other law firm members in the case with the claims professional, including the cost of managing this group. Any changes to the case staffing must also be discussed with the claims professional prior to the law firm undertaking those changes.

Starr expects that the assigned timekeepers will be located in the law firm office most convenient to handling the case, unless other arrangements are approved by the claims professional. Travel time and travel expenses billed from more remote offices may be adjusted to conform to this requirement.

Counsel should assign only personnel appropriate to a particular case. For example, Starr will not pay for partner time when an associate can properly handle a particular matter. Similarly, a reasonable associate or paralegal rate may be applied when tasks performed by a sole practitioner should be categorized as such. One-half the attorney rate shall be applied to any entry deemed suitable for the paralegal rate.

Defense counsel is expected to provide guidance to other members of the law firm that are involved in the case. Unless otherwise agreed in advance, Starr will pay for reasonable intra-office conference time every six months to allow the assigned attorney to discuss the case strategy with other law firm staff members that have been specifically approved by the claims professional, but Starr will only pay for the assigned attorney's actual time for conducting the conference. Starr will not pay for the time of other attendees, nor will Starr pay for file memoranda giving directions to staff, or any other form of intra-office conference, whether oral or written.

### B. Multiple Attorney Attendance

Unless otherwise approved in advance, Starr will pay for only one timekeeper attending depositions, meetings, court appearances, trials, etc. The name of the claims professional and date of approval must be noted on the invoice or the time will be disallowed.



### C. Paralegal Services

Starr recognizes the value of paralegal services when used appropriately to perform substantive work on a file. However, Starr will not pay for either attorney or paralegal services which are clerical in nature, or where there is no significant value added to the case.   Examples of such clerical tasks include, but are not limited to:

- Photocopying, faxing, scanning, and imaging.
- Uploading / downloading documents, Bates stamping, loading documents into case management systems (e.g., Summation), or converting document format.
- Multiple charges for the same document addressed to multiple parties.
- Time billed to travel to copy or retrieve documents from a courthouse, another law firm or other offsite location.
- Scheduling appointments or events, calendaring, docketing, etc.
- Communicating with Court personnel.
- File maintenance and/or organization, including updating files, indexing pleadings, retrieving correspondence or other documents, collating, placing documents in chronological order, creating matter-related sub-files.
- Arranging for trial equipment, setting up a war room, arranging trial or other event logistics, etc.
- Copying CDs, creating binders/folders, receiving, reviewing and/or distributing mail, data entry, preparation of enclosure/transmittal letters.

### D. Personnel Changes

When changes within the law firm require changes to the personnel involved in the matter, the claims professional must be immediately notified of said change and the reason for the change. Starr will not pay for the cost of preparing new participants for their involvement. Starr will also not pay for multiple file reviews by the same lawyer.

### E. Adjournments and Extensions

Approval must be obtained from the Starr claims professional prior to granting any extension or adjournment requested by opposing counsel.



## F.  Research

All legal research in excess of two hours on a particular topic must be approved by the claims professional in advance.

Since assignments are made to law firms which have been selected for their expertise in particular areas of law, Starr will not pay for research which is routine or elementary in nature. Starr expects all counsel to maintain a central research repository, such as a brief bank, and to refer to that repository prior to conducting de novo research. Starr will not pay for redundant research, and will only pay for extending or revising prior research to update it, not if the previous research had been conducted de novo. It is anticipated that routine discovery motions, if approved, will not require any special research.

The results of research in matters of first impression in the locality, or which are otherwise unique or of interest, and the results of any extensive research projects should be supplied to the claims professional.

## G. Expert Witnesses

Expert witnesses, including medical witnesses, should not be engaged without prior approval from the claims professional. Medical examinations should be arranged in consultation with the claims professional, unless otherwise agreed. (Please also see **Billing Practices, Section VI, I**.)

## H. Settlement Activity

### 1.  Attendance at Settlement Conferences, Mediations or Arbitrations

As soon as a settlement conference, mediation or arbitration is scheduled, counsel shall confer with the claims professional to determine whether the attendance of a company representative is desirable or required by the Court. If it is decided that no company representative need attend, then arrangements for telephone contact with the claims professional during the conference must be made. Starr expects counsel to identify any relevant requirements or local court rules regarding participation in settlement conferences and mediations.



### 2. Request for Settlement Authority

In those cases where responsibility for the settlement has been delegated to counsel by the claims professional, Counsel must submit requests for settlement authority on a timely basis, preferably not less than 30 days prior to a settlement discussion. Starr will not tolerate requests for authority on the "eve of trial" or the day before a settlement conference. Settlement demands shall be communicated to the claims professional as soon as they are received. The claims professional may request a settlement recommendation, if so, those should be provided with adequate time for review within Starr.

### 3. Settlement Checks

Requests for settlement checks must be in writing. Counsel should avoid making any promises concerning the timing of delivery of settlement checks without discussing same with the claims professional in advance. In those rare cases where a settlement check is required on a priority basis, counsel shall immediately advise the claims professional of the precise date when the settlement check is required.

## I. Trial Activity

The decision to take a case to trial should be discussed between counsel and the claims professional as early in the matter as possible.

## J. Jury Verdicts

The decision to take a verdict should only be made after consultation with the claims professional.

## K. Appeals

The decision to file an appeal, interlocutory or otherwise, should only be made after consultation with the claims professional. If another party files an appeal, the claims professional is to be advised immediately.



## L.  Vendor Management

Before any vendor is retained to render services in a matter, counsel should discuss the need with the claims professional to determine if an approved vendor has been identified for the required service. The claims professional's authorization to retain a vendor is required and a budget must be provided.  The name of the claims professional and date of approval should be noted on the invoice.   Examples include but are not limited to e-discovery, local counsel, trial support vendors, mock trial/focus group vendors, video deposition, contract attorneys, experts, consultants, investigators, etc.

## M.  Court Reporting

Starr's nationwide preferred provider for court reporting and related services is listed below.  Please inform them up front that the services requested are for a Starr matter.

> ### Magna Legal Services
> - Phone: 1-866-624-6221
> - Fax:  1-866-579-0819
> - E-mail:  scheduling@magnaLS.com
> - Website: www.magnaLS.com

# VI. BILLING PRACTICES

## A.  Billing Rates

Starr must agree upon all billing rates prior to retention. All rate agreements will remain in effect until amended by mutual agreement.  Unilateral rate increases will not be honored by Starr.   Under no circumstances shall billing rates be increased on any litigation in progress. Any rate increase shall apply only to assignments made after the rate increase has been approved by Starr.

Requests for hourly rate increases must be submitted in writing to Starr Litigation Management at least 60 days prior to the proposed effective date of the increase. Neither Starr claims professionals nor Starr's TPA partners have the authority to agree to rate increases.  Invoices inadvertently paid in violation of this provision are subject to reimbursement.



Approved panel rates shall apply to all covered Starr claims, 1) irrespective of whether the law firm is retained by Starr or the insured/defendant, 2) during and after any applicable SIR/deductible has been satisfied, and 3) whether the defendant is a Starr insured, additional insured tender acceptance, etc., to the extent consistent with the policy language and applicable law.  Starr expects counsel to conduct any necessary due diligence to ascertain whether Starr is the carrier involved, and issue any credits that may be due from an inadvertent failure to apply panel rates to a covered Starr matter.

### B. Invoice Submission Timing and Minimum

Invoices on Starr direct-handled claims should be submitted by the law firm on a quarterly basis unless the claims professional requests a different billing interval. Invoices related to Starr coverage litigation and corporate matters should continue to be submitted on a monthly basis.  For claims handled by Starr's TPA partners, law firms shall conform to the billing intervals requested by each TPA.   Invoices totaling less than $500 should be held until the total reaches that threshold or the case has concluded. Invoices submitted more than 120 days after the end of the quarter in which the services were performed may be rejected in full at Starr's discretion. Final invoices should be submitted within 30 days of the conclusion of services. Any deductions to a bill will be considered final and binding if not appealed within 30 days.

### C. Flat Charges and Minimum Charges

Counsel shall not apply flat charges as part of its rate structure unless such flat charges have specifically been agreed to by us. Nor shall counsel apply a minimum charge for any activity.  Starr will not accept standardized charges for work that is form in nature, or pay for multiple charges for the same document addressed to multiple parties.

### D. Disbursements / Third-Party Vendors

Invoices from third-party vendors shall be paid directly by the law firm, incorporated into the law firm's invoice to Starr and include the appropriate detail and disbursement codes.  Copies of third-party invoices shall be included with the law firm invoice.   There may be times when it is more appropriate for Starr to pay a third-party vendor directly and such arrangements shall be mutually agreed upon



in writing by Starr and the law firm. Counsel shall adhere to the expense pre-approval provisions detailed in the Guidelines.

## E.  Travel Expenses

Starr will not pay for local travel expenses of less than 25 miles round trip from counsel's office. Starr will only reimburse counsel for reasonable travel expenses (in excess of 25 miles round trip) which have been incurred after consultation with the claims professional. Only coach/economy class airfare and moderately priced hotel accommodations will be reimbursed. Travelers will be reimbursed a reasonable amount for meals during approved travel on Starr matters.  Charges exceeding $25 for breakfast, $35 for lunch and $45 for dinner will be adjusted to conform to these Billing Guidelines.  Alcoholic beverages will not be reimbursed.

Starr will not accept lavish or unnecessary expenses for reimbursement. All travel expenses submitted to Starr for reimbursement must apply all cost savings received by counsel through rebates or other value. Starr will not reimburse travel agency fees incurred by the law firm.  Meals and entertainment expenses incurred while traveling are subject to the provisions of section G below. Travel expenses shall be itemized on counsel's billing, with copies of all receipts attached. Undocumented travel expenses will not be reimbursed.

## F.  Travel Time

Starr shall compensate at full billing rate for time spent in transit only when travel time is devoted to actual billable work.  Otherwise, Starr shall compensate for time spent in transit at half the billing rate of the attorney traveling if there is no actual billable work conducted, unless, however, billable work is being conducted for another client in which case such travel time shall not be compensated by Starr. Travel entries should be listed separately, not block billed with the entry for the event being attended.  Travel entries shall detail where the travel is to/from, and whether the distance is more or less than 25 miles round trip from the law firm office.

## G. Meals and Entertainment

All requests for reimbursement of meals or other entertaining expense shall be individually itemized, showing persons entertained, amounts incurred and the business purpose.



### H. Overhead and Non-Billable Items

Starr considers the following items to be overhead costs, included in the law firm's hourly rate, or otherwise non-billable:

- Charges for computerized legal research services such as Westlaw, Lexis, VerdictSearch, etc.
- Charges for opening or closing files.
- Conflicts checks.
- Charges for preparation of or collection of bills or invoices, or time related to preparing appeals on billing adjustments.
- Word processing, clerical or secretarial charges, including overtime, whether expressed as a dollar disbursement or time charge.
- Delivery and messenger services.
- Storage of open or closed files (paper or electronic), rent, electricity, file folders, binders, or other office supplies or equipment.
- Local and long distance telephone charges, facsimile charges, and postage.
- Technology costs, including hardware, software, internal document hosting fees, licenses, personnel or services related to acquisition, maintenance or upgrade of the law firm's technology infrastructure. If the law firm finds it necessary to incur additional technology costs as a result of a specific matter, the law firm should discuss this need with the Starr claims professional.
- Litigation support, or any other service in excess of the amount actually expended by the law firm for such service. Starr will not pay for any incremental amount, whether or not it is intended to recover the cost of equipment and hardware.
- Summer associates or other similar timekeepers.
- Printing and Copying: Starr does not reimburse for routine copying, scanning or printing.  Every attempt should be made to file documents online on behalf of Starr to avoid voluminous copying/printing jobs.  In the event that large documents cannot be filed electronically and hard copies are required, Starr shall reimburse actual copying costs for an outside copy/print service, but at no more than $0.10 per page. The law firm must indicate the actual number of copies on the invoice.
- Auto mileage rates in excess of the rate approved by the Internal Revenue Service for income tax purposes.
- Equipment, books, periodicals, research materials.
- Interest, bank fees and/or late fees.



- Any other items traditionally associated with overhead.

## I.  Experts and Consultants

The retention of experts and consultants should be done in consultation with the claims professional prior to their engagement. All expert services shall be conducted pursuant to an agreement defining tasks to be performed and will be included in the case budget submitted by counsel.

## J.  Contract Timekeepers

The use of contract attorneys or other timekeepers requires prior approval by the claims professional.  Timekeepers who are not employees of the law firm should be identified as such and should be charged at the actual cost to the law firm. Additional compensation to the law firm for management of non-employee timekeepers must be approved by the claims professional in advance.

## K. Master Billing

When legal services are shared by more than one matter, counsel should provide a master invoice that reflects the actual time incurred for legal services relating to the matters, with a suggested allocation of the invoice total to each of the individual matters. Claims professionals may require additional detail.

## L.  Fees/Expenses requiring prior approval

For any task or expense requiring pre-approval to be reimbursable, the billing entry shall include the name of the person who granted the approval and the date it was granted.

## VII. BILL FORMAT and PAYMENT

Starr utilizes the e-billing platform Legal Tracker ("Tracker") for most direct-handled Starr claims.  There will be some exceptions for which paper bills are required.  For claims administered by Starr's TPA partners, law firms should maintain the existing billing practices for those TPAs.  Any changes to the billing procedures for TPA-managed files would be noticed under separate cover.  Law firms will receive a notification for any Starr direct-handled claim that is to be billed via Tracker.



ACH payments are the preferred method of payment for all legal expenses on direct-handled Starr claims.  TPA-managed files may have different payment procedures.

Below are the details of billing requirements for both Legal Tracker and paper billing formats:

## A. Legal Tracker

### 1. Invoicing Procedures

Following receipt of notification that a particular claim has been set up for electronic billing, invoices shall be submitted via the Legal Tracker electronic billing platform and posted to the pre-assigned matter provided by Starr's legal billing department.

Prior to invoice submission, the law firm must ensure that the law firm's profile in Tracker has the most current relevant information including the following:

- The law firm's administrative office address;
- The law firm's federal tax identification number (if applicable), or equivalent information; and
- Wire Instructions.

Additionally, budgets must be submitted via the Tracker system for approval by the claims professional.

### 2. Invoice Content

Invoices must be submitted in the legal industry standard Legal Electronic Data Exchange Standard (LEDES) 1998BI format, containing the following information:

- Invoice date and invoice number;
- The rate of the timekeeper performing the service;
- The total cost of each time entry;
- At least one charge line descriptive of the services provided;
- The Starr responsible attorney or claims professional requesting the work or project;



- Itemization of disbursements;
- A subtotal of all legal fees and disbursements, including clear identification of any discounts or adjustment, and the resulting invoice total; and
- Task Codes (as discussed below).

### a. Task Codes

Starr requires Uniform Task Based Management System ("UTBMS") task codes on LEDES-formatted invoices that are posted by the law firm to Tracker. For information regarding UTBMS task codes, please visit the UTBMS website: http://www.utbms.com/

### b. Time Entries

Time entries should reflect actual time spent and must be rounded to the nearest tenth (0.1) of an hour.

Time entries for telephone conversations, conferences, meetings, and court conferences must specifically describe the parties involved and the subject matter or purpose of the task.  Charges for preparing or reviewing correspondence should identify the subject matter, the author and the recipient(s) of the correspondence.  Correspondence-related time entries that do not provide such information shall not be reimbursed.

Block billing, i.e., aggregating multiple tasks under a single time charge, is not allowed. Each billing entry should provide a sufficiently detailed billing description so that the specific nature of the legal services provided can be clearly understood. Overly generalized and vague billing entries will not be paid.

### c. Disbursements and Expenses

The law firm shall post all disbursements and expenses to Tracker and present them in an itemized list and shall also include a brief description of such disbursement or expense.

Law firms shall upload receipts for all disbursements and expenses (including all meals) regardless of amount as supporting documentation in Tracker.  Starr



shall not reimburse the law firm for any disbursements or expenses submitted as "Miscellaneous" or "Other," and UTBMS expense codes E123 ("Other Professionals") and E124 ("Other") will not be accepted.

**d. Appeals**

Any appeal request should be emailed to ClaimsLTSupport@Starrcompanies.com   Any deductions to a bill will be considered final and binding if not appealed within 30 days.

**Additional detail regarding bill submission via Legal Tracker is included in the Starr Billing Guidelines available for review in the Legal Tracker system.**

**B. Invoicing procedures for paper bills not submitted through Legal Tracker**

Invoices not submitted via Legal Tracker should use Starr's preferred format, itemizing each activity. (See Attachment D). Counsel shall bill actual time in 1/10 hour increments.  Invoices can be submitted via paper or via electronic mail. Documents in support of all costs and disbursements shall be attached to the invoice.

Block billing, i.e., aggregating multiple tasks under a single time charge, is not allowed. Each billing entry should provide a sufficiently detailed billing description so that the specific nature of the legal services provided can be clearly understood. Overly generalized and vague billing entries will not be paid.  Please refer to Starr's Legal Billing Guidelines for additional detail on Starr's billing requirements.