# EXHIBIT F



Joseph A. Ziemianski<br>
Direct Dial: (832) 214-3920<br>
jziemianski@cozen.com

October 9, 2020

**VIA E-MAIL:** *joel.hubscher@chk.com*

Joel A. Hubscher
Compliance Counsel
Chesapeake Energy Corporation
P.O. Box 18496
Oklahoma City, OK 73154-0496

      RE:    Fire at Chesapeake Operating, LLC Well Site, Burleson Co, TX
              Insured:        Chesapeake Energy
              DOL:            29 January 2020
              Claim No:      3F981671429868

Dear Joel:

      I write in response to your email dated October 6, 2020 to Starr, among others, concerning the amounts that SDS has tendered to Chesapeake. This letter also supplements my email to you dated August 5, 2020 on the same subject. It continues to be our belief that fees tendered should be covered under a policy purchased by SDS as required by the MSA.

      Pursuant to Section 10.1, the MSA provides:

> 10.1 Required Insurance. Without affecting or limiting the indemnity obligations or liability of Contractor Group or its insurer(s), at all times during the obligations of this Agreement, Contractor, at its sole cost and expense, shall maintain insurance coverage of the kinds set forth herein, and in no less than the minimum amounts set forth in Exhibit A. Contractor shall maintain the following insurance, at a minimum: . . . . (Emphasis added.)

      In Section 10.1(b), SDS was required to purchase general liability insurance including "operations of independent contractors, contractual liability to the fullest extent permitted by law…." Section 10.2 provides:

> 10.2 In the event that Contractor obtains insurance in an amount in excess of the amounts specifically set forth in Exhibit A, the total amount of insurance (general liability plus excess/umbrella) evidenced by Contractor in the certificate of insurance provided to

_____

LyondellBasell Tower   1221 McKinney   Suite 2900   Houston, TX 77010
832.214.3900   800.448.8502   832.214.3905 Fax   www.cozen.com
LEGAL\48756501\2

October 9, 2020
Page 2

>Company is the amount of insurance supporting the indemnity obligations under this Agreement.

Under Section 10.5 of the MSA, SDA "must name [CHESAPEAKE] as an additional insured, to the fullest extent permitted by law, on all insurance of Contractor under this Agreement. . . ."

Pursuant to paragraph 11(f), the indemnity obligations are to be supported by the available liability insurance in accordance with Section 10 which, as stated above, is to be purchased at the sole expense of SDS for the benefit of Chesapeake.

Underwriters at Lloyd's issued policy number NECP0104-19 to SDS Petroleum Consultants, LLC which contains the following "Blanket Additional Insured Endorsement":

> We agree that this policy shall include as Additional Insureds any person or organization to whom the Named Insured has agreed by written contract to provide coverage, but only with respect to operations Performed by the Named Insured and only with respect to an "occurrence".
>
> 1. Otherwise covered by this policy; and
>
> 2. That occurred subsequent to the making of such written agreement.
>
> All other terms and conditions remain unchanged.

On August 6th, we recommended that Chesapeake seek additional insured status under the Lloyds policy and submit any amounts it believes it owes as indemnity under the same policy. The MSA makes it abundantly clear that SDS was to purchase insurance, at its sole expense, including insurance for contractual liability. Since Chesapeake should be entitled to insured status, SDS's insurer should be paying your defense fees as an additional insured and any amounts that you believe is owed to SDS. Did Chesapeake tender to SDS's insurer?

You previously inquired about the "occurrence" requirement. As you know, SDS is named as a defendant in many of the underlying lawsuits. The negligence claims against Chesapeake and SDS provide the basis for the occurrence requirement that gives rise to a defense obligation owed to Chesapeake as an additional insured.

Finally, SDS is not an additional insured under the Starr policy. So, Starr has no duty to defend SDS. I believe you agree.

October 9, 2020
Page 3

With best regards, I am

    Sincerely yours,

    COZEN O'CONNOR

    *Joseph A. Ziemianski*

    Joseph A. Ziemianski

JAZ/hm